First case this morning is People v. Seiler. That's case number 4100426. For the appellant, we have John Watson for the appellee, Thomas Doty. Mr. Watson. Thank you, Your Honor. May I please have the floor? Counselor? Good morning, Your Honors. My name is John Watson from Craig & Craig. Of course, I represent the defendant appellant in this cause of action, Joe Seiler. The question before Your Honors is the constitutionality of the search of a closed container, that closed container being a silver bullet-shaped container that was found on the person of the defendant in this case. Your Honors, the concern that we have is that the constitutional basis that has been offered by both the state and the probation office seems to all be done in hindsight with regard to this case. We believe that the best police work can be done in foresight, where the officer at every step of the way is thinking about, you know, what do I have here? Do I have articulable suspicion? Do I have probable cause? Do I need probable cause? Do I have a consent? We don't think that was done here. We think what happened in this particular case is that the probation officer having a probation order in hand and having reasonable suspicion that that probationer, Terry Owen, committed a violation, that he had essentially carte blanche to search everything and everybody in that residence. Well, let me go back to your first statement, counsel, that the search was of the defendant's person and something he had on his person. But in reality, isn't it correct that the silver bullet, I'll call it that, was on a coffee table or something and he was acting very jumpy and reached out and took possession of that in the presence of the probation officer? Well, I think what the probation officer knows for certain is that the defendant makes a lunge toward a table and that he has his hand clenched around something. That's what we know for sure. That's all that anybody sees. So the question becomes whether or not the... No articulable suspicion about anything I've done. The probation officer can't say, well, empty your pockets, I want to search you too. I agree with that. But this is something that is out in, I'll use the term plain view, although that's a loaded term, I know, but he jumps up and reaches out and grabs this thing. That's a little bit different than somebody who's just sitting there quietly saying, I'm just a third-party observer to this search. Well, I think it was something... I mean, the defendant was jumping around, acting unusual. I think the probation officer testified that, in his opinion, he may have been under the influence of methamphetamine. So it wasn't a situation where he was just standing there and came up and said, I agree with that. But I think what we have here is that the officers come in, they kind of round people up, they bring them, and I think that's all authorized by what they can do. I think officer safety allowed them to do that. When he makes this move and he appears to have something in his hand, I think the officer definitely is in a proper spot to say, hey, listen, I want to know what he has in his hand. So he directs him to open up his hand. But there's no doubt that when he sees and recovers that silver bowl-shaped container, it is on the person of Joe Seiler. So I understand this issue, and I think it leads into both the question of, was it within the scope of the probation search, and also this question of the search incident to arrest. Well, would you agree that the probation officer had the authority to search everything in the house? No. No. No, clearly not. Clearly not. That is, and I have it in my order as the third issue, and that's with regard to the scope of this probation search. It's something that's new. It's probably maybe the most interesting argument that we have before your honors. It's because this is new, and we haven't discussed it. There is a lot of cases that have talked about it, and I think this court is in a position to kind of maybe put the outline of how this should be done. And if I could go to my outline on that. I think the first thing is clear, is that the probation order does not give the officers carte blanche to simply search everything and everybody in the house. So you can look at some other... Let's leave out everybody and just talk about things in the house. Things in the house. I think the same, after you get through that basic proposition that it doesn't give you carte blanche, is this question of, is the search reasonable? And it's reasonable if the officers have a reasonable suspicion that the area or the container is owned, controlled, or possessed by the probationer. So that's the standard. And that circles back to my real question. Let's assume that the silver bullet was on the coffee table. Open, in the probationer's house, easily observable. And let's say your client just sat there like a little angel. Wasn't hopping around or anything like that. Would the probation officer be able to take possession of that silver bullet and open it up and look at it? The answer is, maybe. And here's where we go with that. I think that the second proposition is that the officer has to make a decision as to whether or not, really ultimately it's testified in court, but whether or not he has a reasonable, articulable suspicion that that item is owned and controlled by the probationer. So he has to make that decision of whether or not he's going to do that search at the time, and based upon all relevant facts. The Milton v. State, that was the Alaska out of 1994, seemed to be one of the leading cases that talked about a warrantless search may extend to common areas which the probationer has common authority. But what I want to suggest to the court is that this area should be exercised with caution for a couple of reasons. One is because a warrantless search may extend to common areas, but all depends upon the facts of the case. So there are a number of factors that we have listed in the briefs and the cases talked about. It's factors such as, was that item gender specific? We talked about coats and jackets in purses. Sometimes the gender specific nature of the item may suggest that, hey, it does belong to the probationer or it does not. Another factor is whether or not somebody affirmatively states that's theirs. So that's a second factor. Also, we saw in People v. Gross other indicia of ownership, such as letters, bills, or photographs that are in or around that particular item. Finally, there was, in Milton v. State, a talk about this idea that perhaps common access doesn't necessarily mean a common area. And that was the case where they went into the bedroom of a roommate and they found a suitcase and they ended up searching it. And they argued, well, he had authority or access to that suitcase. Well, they found that wasn't enough. So with regard to this question of whether or not a common area, whether the search or probation order may allow a search of a common area, it really comes down to a fairly intense factual question. So what you pose is essentially a hypothetical. We don't have that situation. It wasn't sitting on the table with the defendant just sitting over by the wall. He actually went over apparently and may have lunched for it. So if it was in the area, he has claimed it. But do you think that can convert a lawful search? Absolutely. If he asserts control over an item that's in a common area where the probationer is living. I'll say this in two instances. First off, with regard to if it was in the area. Could they search? Possibly, maybe. What do you mean possibly, maybe? Doesn't the order say that the probationer has to submit to a search of this person, her person, and the residence? Well, the question comes down to whether or not the officers have a reasonable, articulable suspicion that that item is owned or controlled by the probation. So let's look at the, and this came down to, and we talked about this a little in our briefs, and it was the People v. Tadago case. That was the California case from 1981. That somewhat suggests that maybe the probation officer has an affirmative duty to say, okay, who is this? And that had been criticized. But it comes around back to the same principle that the officer has to take into account all facts that he has at the time the search is being done. So under that hypothetic, if it's sitting in the middle and you look at it, and there's nothing distinctive about this particular item at all, you look around it, is there anything else on the table that would show indicia of either? And there's not only one person, there's another, this Chad Griesheimer. You know, is there any indicia in and around that item, which would suggest it's either Joe Silers or this Chad Griesheimer? So what the officers have to consider are all these facts around. Should the officer make an affirmative inquiry as to, hey, whose is this? And that's such a, and I'm not going to say, I think I would disagree with Tadago to the suggestion that you should have a hard and fast rule of making an inquiry. But I think that the officer, if he's left there not knowing, and he doesn't have that basis, in foresight thinking, okay, where am I right now? Do I have reasonable suspicion that this item is owned, controlled, or possessed by the probation? And maybe he says, well, it's in a common area. Nobody else has claimed it. It's in her house. It's in her residence. I don't see anything else around it that would suggest it's anybody else's. I think it's hers. And that may be okay. What about joint and constructive possession? It's sitting on the coffee table. She's living there. Well, I don't think you have to go to joint and constructive possession. I think the question... You seem to be arguing that because he lunges for it, puts it in his hand, that makes it his. Yes. I mean, that's the basis for the possession of controlled substance charge. Here, in this particular case, there is no question in my mind that when the officer seizes that container out of his hand, that he believes it's Joe Seiler's. Let me back up, because you make it seem like it's solely his. Because he lunges for it, that makes it solely his, and not jointly his and hers. Well, he lunges for it. It's found in his hand. Well, you could pick up anything in that house and put it in your hand. It doesn't mean you own it. I believe, at that period of time, that probation officer believes that is Joe Seiler's. I don't think he has any belief at all that it belongs to the probation officer. How do we know that? Well, this is, of course... I mean, it's an objective standard. I mean, ultimately, the court has to make that decision. And I talked a little bit about the standard review. And I think this is one that there is no argument about the basic facts of this case. I mean, you know, we have not attacked the credibility of the probation officer in this case. So it's really the courts have to test this and say, from an objective standard, do I think it's reasonable for that officer to believe that it's owned or controlled or possessed by the probation? Wasn't the information that the probation officer had, that she and this defendant were using and making methamphetamine in the residence? Well, I think these issues with regard... And that provided certainly the reasonable suspicion to believe that there was a probation violation. But I don't think that reasonable suspicion had anything to do with Joe Seiler. If you recall from it, I think it was... I believe it was the hearing on the motion to suppress, Officer Kelly said, I had no idea who he was. I didn't know if he lived there or not. And the same applies to reason. So this issue of whether or not there was a probation violation, whether or not Terry Owen was using, that may all develop probable cause for the idea that, hey, I think there's something in here. Whether it's methamphetamine or cannabis or other contraband, I think there's something in here. But the question is, for the probation issue, who owns, controls, or possesses that? So that's the issue. So by saying, well, we've got a whole lot of evidence that something, that Terry Owen was doing something bad in here, does not change the question of who owns this thing that is found in the possession of Joe Seiler. This is an interesting area. And it's new. And I'm kind of, I mean, I hope this really gets it right. So that's where we're at. I think that those are the factors. That's the question. The probation order doesn't give you carte blanche. You've got to have reasonable suspicion that that item that's going to be searched, or that area, is owned, controlled, or possessed by the probationer. You'll look at it by all the facts available to the officers at the time. And finally, you know, there's no hard and fast rules on what an officer should or shouldn't do. But if he feels he doesn't have enough to say, well, this comes under the probation order, I tell you, there was no harm here in saying, okay, I'm going to get a search warrant. And at the minimum, too, I really don't understand why the officer didn't ask for consent. But that did not happen here. Let me ask you this question. Let's assume that the probation officer comes into the house and, you know, I'm going to search this residence because I've got suspicion that the probationer is doing bad stuff. And there are these two guys hanging around, and he takes them. He says, you sit down here at the kitchen table and don't move. Completely different room. Goes into the living room, sees the silver bullet on the coffee table, picks it up, opens it up. Aha, there's drugs. All right? Anything wrong with that? I think it goes back to my earlier response. The question is, it's in a common area. There's nothing distinctive about this container at all. You say it's a common area, but it's her house, okay? He's supposed to search her and everything in her house. We don't know who owns the silver bullet, all right? Neither does the probation officer. But he comes in. He's got your client and the other guy in the kitchen sitting at the kitchen table. He sees the silver bullet on the coffee table, said, hmm, you know, this is the kind of thing that people store drugs in. Picks it up, opens it up, finds the drugs. Aha, I found drugs. Anything wrong with that search? Now, we're not talking about who's culpable yet. Just anything wrong with the search? Well, I do want to say one more thing. There wasn't simply just one person living there. She also had a son that had lived in that residence as well. So you have to look at it and say the question, is this something that a minor may have? Because I think the rules apply to him too. You couldn't go into his room and simply search everything. That really wasn't my question. I know, I know, but I'm going back to the same point. Because it's not only her residence and only her items. So the question comes down, you know, is there other indicia in and around that item? If it was found on this coffee table, that suggests, well, it's either it's hers, it's not hers, or it's her son's, it's not her son's, or it's somebody else's. Well, the living room is not his bedroom. The living room is a common area. So I get back to my question.  Your client and the other guy are in the kitchen. He sees the silver bullet, coffee table in the living room, picks it up, opens it up, ah-ha, drugs. Up to that point, not worrying about who's culpable for possession of it, is the search bad. I think the answer is that we simply don't have the facts to know, you know, what would have happened. Now, if you want to add facts that it's sitting on top of a letter that's addressed to Terry Owen, or if it's sitting on a letter or something having to do with the son, I think under that hypothetical, we simply just don't have enough facts. Well, the probation officer knows that it's her house and not Mr. Seiler's house, right? I think he knows it's at least her house. I think the probation officers also collectively know that the son is living there as well. Well, okay, but is Mr. Seiler the son? No, no. Okay, we know that Mr. Seiler is not living in that house, correct? That is somewhat, that's ambiguous with regard to the record, but I think the probation officer at the time, collectively the probation officers, don't know who he is and don't know where he's living. But they do know that it's her residence and that her son is there as well. Is this five minutes? Two minutes, okay. So I think under that hypothetical, we simply don't have enough facts. And the reason being is because essentially that's not the way the search went down. Now, if it was in there and they looked around and they said, okay, we can identify it, and that's something that didn't come out either the prelim or the suppression hearing, okay, what else was on that coffee table? What was on there? That just never came out. We don't have a record on what those facts are. Well, we talked about the probation issue a lot. That must be the topic that's on your minds. I am prepared to answer questions about the other issues if you have any. But now that I'm running out of time, I'd like to thank you. I guess I'll say one thing about the remedy. I think the state will agree that if you do find that suppression should have been granted, I think what we're asking for here is a reversal of the conviction. And with that, I thank you. Thank you, Counsel. You'll have rebuttal. Mr. Godegie? May it please the Court, Mr. Watson. I would just like to make a brief comment about the probation search issue. At least as I understand the defendant's position as expressed in his brief, it is that the defendant, by grabbing the silver bullet, so to speak, eliminated reasonable suspicion and eliminated the basis of a probation search. In other words, a person, someone, could eliminate a probation search or refute a probation search simply by grabbing an item in a common area where he was present. I suggest that that is unreasonable under the Fourth Amendment and that consequently the defendant's argument is basically not tenable. That concludes the statement I would like to make. I'm, of course, available to respond to questions. Seeing none, thank you, Counsel. Rebuttal, please. Your Honors, I think what my argument is, is that the officer has to make a decision based upon all facts that he has at the time of the search. Now, at the time of the search, he may have believed it came from the coffee table, but he did not go over to the coffee table and look on there and make any further investigation about what was on the table, what was there, what was around. So I think this is another example of the State basically trying to say, you know, hey, in hindsight, we think this thing was on the coffee table in a common area and we could do it. But at the time of the search, he wasn't thinking about the coffee table. It was in the defendant's hands. So that's what my focus is on, and I think that's what the relevant inquiry is, is what facts are available to the officer at the time the search is done. And he did not go to the coffee table and say, okay, what else is there? At the time, it was in the defendant's hands. Thank you, Your Honors. Thank you, Counsel. The case is submitted before standing recess.